UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| CHANNING L. SCOTT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:11 CV 330 |
| | ) |
| CAPTAIN TRINA HAYWOOD, | ) |
| OFFICER YEAETHA DILLON, | ) |
| OFFICER JEFFREY KROEMER, | ) |
| LIEUTENANT JOHN GONZALES, | ) |
| OFFICER KAYLE SCHLEMMER, | ) |
| OFFICER ROBBIE JAMES, OFFICER | ) |
| PENNY LAKE, and the ALLEN | ) |
| COUNTY SHERIFF, | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

This matter is before the court on defendants Captain Trina Haywood, Officer Yeaetha Dillon (erroneously identified in the amended complaint as Yeaetha Dylan), Officer Jeffrey Kroemer, Lieutenant John Gonzales, Officer Kayle Schlemmer, Officer Robbie James, Officer Penny Lake, and the Allen County Sheriff's motion for summary judgment on all of plaintiff Channing Scott's claims. (DE # 30.) Plaintiff has not filed a response, and the time to do so has now passed. For the following reasons, defendants' motion is granted.

I.   **Facts and Procedural History**

This case stems from a delayed prison disciplinary hearing. Plaintiff, who is black, was previously incarcerated in the Allen County Jail. Plaintiff alleges that he was discriminated against on the basis of his race while at the Allen County Jail after he was

forced to stay in segregation for 21 days while awaiting a disciplinary hearing, despite the fact that two white inmates who arrived in segregation around the same time as plaintiff were given disciplinary hearings before plaintiff had his disciplinary hearing. (DE # 27 at 1-4.) In his first amended complaint, plaintiff alleges that defendants are liable for violations of the Fourteenth Amendment's Equal Protection clause under 42 U.S.C. § 1983. (*Id.* at ¶ 10.)

In their brief in support of their motion for summary judgment, defendants have submitted a statement of material facts. (DE # 31 at 2.) Because plaintiff has not responded to defendants' motion for summary judgment, these facts are deemed admitted for purposes of this motion. FED. R. CIV. P. 56(e)(2).

**Facts Regarding the Allen County Jail's Disciplinary Proceedings**

An inmate who violates the rules at the Allen County Jail will be subject to a disciplinary proceeding which is conducted by the Discipline Board. (DE # 31 at 2.) Both defendant Officer Kroemer and defendant Officer Lake are permanent members of the Discipline Board. (DE # 31 at 2; DE # 30-1 at ¶ 3.) In order for the Discipline Board ("the Board") to convene and conduct hearings, there must be three members of the Board present. (DE # 31 at 3; DE # 30-1 at ¶ 4.) After an inmate violates an Allen County Jail rule, an officer places the inmate in disciplinary segregation and writes a report detailing the violation. (DE # 31 at 3; DE # 30-1 at ¶ 5.) The officer's report is then brought to the Board's attention, and either Officer Kroemer or Officer Lake create a hearing packet. (DE # 31 at 3; DE # 30-1 at ¶ 6; DE # 30-2 at ¶ 6.)

After the Board receives the hearing packet, the Board assigns a hearing date. (*See* DE # 31 at 3; DE # 30-1 at ¶ 7.) The hearing dates are assigned based on the date of the alleged violation, and inmates are given a copy of the hearing packet prior to the hearing. (DE # 31 at 3; DE # 30-1 at ¶ 7.) On the actual day of the hearing, the order of the hearings is determined by the date of the alleged violation. (DE # 31 at 3; DE # 30-1 at ¶ 8.) The inmates with the oldest alleged violations have their disciplinary hearings before inmates with newer alleged violations. (*See* DE # 31 at 3; DE # 30-1 at ¶ 9.)

The length of each disciplinary hearing varies, depending on whether the inmate contests the charges or presents witness testimony in their own defense. (DE # 31 at 3; DE # 30-1 at ¶ 10.) Because the length of each hearing varies, the Board has limited control over how many hearings it will conduct each day it is in session. (DE # 31 at 3; DE # 30-1 at ¶ 10.) Additionally, events outside of the Board's control can result in the postponement of hearings, which may result in fewer hearings on any given day. (DE # 31 at 3; DE # 30-1 at ¶ 11.) For example, a security incident might require the attention of all jail staff on duty, and thus, would end the disciplinary hearings for that day. (DE # 31 at 3; DE # 30-1 at ¶ 7.) (*See* DE # 31 at 3; DE # 30-1 at ¶ 11.) If an inmate has to attend a court hearing on the same day as his or her disciplinary hearing is scheduled, the disciplinary hearing is scheduled for the next available date. (DE # 31 at 4; DE # 30-1 at ¶ 4.)

**Plaintiff's Disciplinary Hearing**

On September 17, 2009, plaintiff committed trafficking, a violation of the Allen County Jail rules, and was placed in disciplinary segregation. (DE # 31 at 4; DE # 30-1 at ¶ 12; DE # 30-4 at ¶ 6.) Plaintiff's disciplinary hearing was scheduled for September 29, 2009. (DE # 31 at 4; DE # 30-1 at ¶ 14.) The hearings set for September 29, 2009 covered alleged violations that occurred on September 11, 2009, September 13, 2009, September 16, 2009, and September 17, 2009. (DE # 31 at 4; DE # 30-1 at ¶ 15.) On September 29, 2009, the disciplinary hearings were conducted in order of violation date, and the oldest alleged violations were heard first. (DE # 31 at 4; DE # 30-1 at ¶ 16.) Due to the high number of hearings schedule for September 29, 2009, the Board did not have enough time to conduct plaintiff's hearing. (DE # 31 at 4-5; DE # 30-1 at ¶ 17.)

Because the Board was unable to hold plaintiff's disciplinary hearing on September 29, 2009, the hearing was rescheduled for October 5, 2009. (DE # 31 at 5; DE # 30-1 at ¶ 18.) The hearings scheduled for October 5, 2009 covered violations from September 17, 2009, September 19, 2009, September 20, 2009, September 24, 2009, and September 26, 2009. (DE # 31 at 5; DE # 30-1 at ¶ 22.) Plaintiff, however, attended a court hearing on October 5, 2009, and was unable to attend his disciplinary hearing scheduled for that day. (DE # 31 at 5; DE # 30-1 at ¶ 23.) Plaintiff's disciplinary hearing was therefore rescheduled for October 7, 2009. (DE # 31 at 5; DE # 30-1 at ¶ 24.)

Plaintiff's disciplinary hearing was held on October 7, 2009. (DE # 31 at 5; DE # 30-1 at ¶ 25.) After determining that plaintiff was a repeat offender, plaintiff was

sentenced to time served. (DE # 31 at 5; DE # 30-1 at ¶ 26.) Plaintiff was released from segregation on October 8, 2009. (DE # 31 at 5; DE # 30-1 at ¶ 27.)

Although several of the defendants had contact with plaintiff while plaintiff was incarcerated at the Allen County Jail (*see* DE # 30-3 at ¶¶ 3-9 (defendant Haywood); DE # 30-4 at ¶¶ 5-6 (defendant Gonzales); DE # 30-4 at ¶¶ 3-9 (defendant Dillon)), only two defendants had any control over or any impact on the scheduling of plaintiff's disciplinary hearing: defendants Lake and Kroemer. (*See* DE # 30-1 at ¶ 37 ("Officer Lake and [Officer Kroemer] are the only officers responsible for scheduling and conducting discipline hearings."); DE # 30-3 at ¶ 5 ("Corporal Jeffrey M. Kroemer and Officer Penny Lake are tasked with conducting discipline hearings for inmates in the Allen County Jail.")).

**Amber Graves's Disciplinary Hearing**

Amber Graves, who is white, was involved in the same trafficking incident that plaintiff was involved in on September 17, 2009. (DE # 31 at 5; DE # 30-1 at ¶ 13.) Graves's hearing was conducted on September 29, 2007. Graves admitted to the trafficking violation and was sentenced to time served. (DE # 31 at 5-6; DE # 30-1 at ¶ 20.)

**Matt McKee's Disciplinary Hearing**

Matt McKee, who is white, violated Allen County Jail rules on September 11, 2009. (DE # 31 at 6; DE # 30-1 at ¶ 29.) McKee was initially held in observation due to suicide precautions. (DE # 31 at 6; DE # 30-1 at ¶ 30.) After being released from

observation, he was moved to disciplinary segregation. (DE # 31 at 6; DE # 30-1 at ¶ 31.) McKee's disciplinary hearing was originally scheduled for September 23, 2009, but had to be moved to September 29, 2009 because McKee was required to be in court on September 23. (DE # 31 at 6; DE # 30-1 at ¶¶ 32-33.) McKee was sentenced to 40 days and was released on October 21, 2009. (DE # 31 at 6; DE # 30-1 at ¶ 34.)

### Plaintiff's Allegations

Plaintiff alleges discrimination based on when his disciplinary hearing occurred in relation to when Graves's and McKee's disciplinary hearings occurred. Specifically, plaintiff alleges that defendants discriminated against him on account of his race when Graves had her disciplinary hearing approximately two weeks before plaintiff had his disciplinary hearing, despite the fact that both plaintiff and Graves were disciplined for the same incident. (DE # 27 at 4.) Plaintiff further alleges that defendants discriminated against him on account of his race when McKee, who plaintiff alleges arrived in segregation after plaintiff did, had his disciplinary hearing before plaintiff's hearing. (*Id.*) Plaintiff contends that defendants' conduct violated the Fourteenth Amendment's Equal Protection clause. (*Id.*)

## II.     Legal Standard

Defendants have moved for summary judgment. FEDERAL RULE OF CIVIL PROCEDURE 56 requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear

the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate–in fact, is mandated–where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.,* 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

The moving party bears the initial burden of demonstrating that these requirements have been met. *Carmichael v. Village of Palatine, Ill.,* 605 F.3d 451, 460 (7th Cir. 2010). "[T]he burden on the moving party may be discharged by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325. Once the moving party has met his burden, the non-moving party must identify specific facts establishing that there is a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986); *Palmer v. Marion County,* 327 F.3d 588, 595 (7th Cir. 2003) (citing *Celotex,* 477 U.S. at 324). In doing so, the non-moving party cannot rest on the pleadings alone, but must present fresh proof in support of its position. *Anderson,* 477 U.S. at 248; *Donovan v. City of Milwaukee,* 17 F.3d 944, 947 (7th Cir. 1994). In viewing the facts presented on a motion for summary judgment, the court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Chmiel v. JC Penney Life Ins. Co.,* 158 F.3d 966 (7th Cir. 1998); *Doe,* 42 F.3d at 443.

Because plaintiff failed to file a response to defendants' motion for summary judgment, defendants are entitled to summary ruling on the motion – that is, a ruling without the benefit of plaintiff's response. Plaintiff's failure to respond, however, does not automatically result in summary judgment for defendants. *Wienco, Inc. v. Katahn Assoc., Inc.,* 965 F.2d 565, 568 (7th Cir. 1992). Rather, the court must still "make the further finding that given the undisputed facts, summary judgment is proper as a matter of law." *Id.* Accordingly, the court's task is to examine the factual record in this case to determine whether defendants have met their burden of demonstrating a lack of genuine issues of material fact warranting summary judgment in its favor.

III. Analysis

**A. Plaintiff's Claims Against defendants Haywood, Gonzales, Dillon, Schlemmer, and James**

Defendants first move for summary judgment on plaintiff's claims against defendants Haywood, Gonzales, Dillon, Schlemmer, and James. (DE # 31 at 9.) These defendants argue that they are entitled to summary judgment because they had no role in scheduling and conducting plaintiff's disciplinary hearing. (*Id.*) "[I]n order to recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right." *Knight v. Wiseman*, 590 F.3d 458, 462-63 (7th Cir. 2009) (citation omitted); *see also Allen v. Wine*, 297 F. App'x 524, 531 (7th Cir. 2008) ("To hold a person liable under § 1983 . . . the plaintiff must prove that the defendant was personally involved in the deprivation of a constitutional right.").

In this case, plaintiff has alleged that defendants violated the Equal Protection clause of the Fourteenth Amendment by requiring plaintiff to wait for a disciplinary hearing for two weeks longer than a white female inmate who was disciplined for the same act that plaintiff was. (DE # 27.) Additionally, plaintiff has alleged defendants violated the Equal Protection clause of the Fourteenth Amendment when a white male inmate, who plaintiff alleges arrived in segregation after he did, received a hearing before plaintiff did. (*Id.*) Defendants, however, have submitted evidence which shows that only two defendants, defendants Lake and Kroemer, had any control over when disciplinary hearings at the jail were scheduled. (*See* DE # 30-1 at ¶ 37 ("Officer Lake and [Officer Kroemer] are the only officers responsible for scheduling and conducting discipline hearings."); DE # 30-3 at ¶ 5 ("Corporal Jeffrey M. Kroemer and Officer Penny Lake are tasked with conducting discipline hearings for inmates in the Allen County Jail.")).

As mentioned above, "in order o recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right." *Wiseman*, 590 F.3d at 462-63 (citation omitted). Because plaintiff's only allegation of a Constitutional deprivation is based on the scheduling of his disciplinary hearing, and because defendants have submitted evidence which shows that only defendants Lake and Kroemer had any control over the scheduling of plaintiff's disciplinary hearing, defendants Haywood, Gonzales, Dillon, Schlemmer, and James have met their initial burden on summary judgment. Plaintiff has failed to

9

respond to defendants' motion, and therefore, has failed to submit any evidence that defendants Haywood, Gonzales, Dillon, Schlemmer, and James were in any way personally responsible for plaintiff's alleged Constitutional violation. Defendants' motion for summary judgment will therefore be granted as it relates to defendants Haywood, Gonzales, Dillon, Schlemmer, and James.

**B. Plaintiff's Claims Against Defendants Lake and Kroemer**

Defendants Lake and Kroemer, the two defendants actually responsible for scheduling plaintiff's disciplinary hearing, argue that they are entitled to summary judgment on plaintiff's equal protection claim because the undisputed evidence shows that the delay in plaintiff's disciplinary hearing was due to time constraints. (DE # 31 at 14-15.) Defendants also argue that plaintiff has failed to present any evidence that the delay was in any way based on plaintiff's race. (*Id.*)

The Fourteenth Amendment to the United States Constitution states, in part, that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. To establish a violation of the Equal Protection clause, a plaintiff must prove that "(1) he is otherwise similarly situated to members of the unprotected class; (2) he was treated differently from members of the unprotected class; and (3) the defendant acted with discriminatory intent." *Greer v. Amesqua*, 212 F.3d 358, 370 (7th Cir. 2000); *see also Xiong v. Wagner*, 700 F.3d 282, 295 (7th Cir. 2012) ("To establish a violation of the Fourteenth Amendment's Equal Protection Clause, a plaintiff must demonstrate that a state actor has treated him differently from persons of

a different race and that the actor did so purposefully." (citation and quotation omitted)).

"A plaintiff must demonstrate intentional or purposeful discrimination to show an equal protection violation." *Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1994) (citation and quotation omitted). "'Discriminatory purpose,' however, implies more than intent as volition or intent as awareness of consequences." *Id.* (quoting *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979)). "It implies that the decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on the identifiable group." *Id.*

As noted above, plaintiff contends that defendants discriminated against him by allowing two white inmates to receive disciplinary hearings before plaintiff did. (DE # 27 at 4.) Defendants point out that defendant has no evidence that either defendant Lake or defendant Kroemer discriminated against plaintiff based on plaintiff's race, and defendants Lake and Kroemer have therefore met their initial burden on summary judgment. *Carmichael v. Village of Palatine, Ill.,* 605 F.3d 451, 460 (7th Cir. 2010).

As for plaintiff's allegations regarding the two white inmates, although plaintiff contends that Matt McKee arrived in segregation after plaintiff, but still received a disciplinary hearing before plaintiff did, the undisputed facts indicate that this allegation is not true. McKee violated Allen County Jail rules on September 11, 2009,

11

(DE # 31 at 6; DE # 30-1 at ¶ 29), which was six days before plaintiff committed his infraction. (DE # 31 at 4; DE # 30-1 at ¶ 12.) Defendants have also presented evidence which shows that McKee was actually being held outside of the general population prior to the date he entered disciplinary segregation, due to suicide precautions. (DE # 31 at 6; DE # 30-1 at ¶ 30.) Finally, the undisputed evidence also shows that the Allen County Jail holds disciplinary hearings in the order of the dates of the alleged violations. (DE # 31 at 3; DE # 30-1 at ¶¶ 8-9.) Thus, the fact that McKee had his disciplinary hearing before plaintiff did is consistent with the jail policy of scheduling hearings based on the date of the violation, and is not evidence of any sort of discriminatory intent.

The court is therefore left with plaintiff's allegation that prison officials discriminated against him based on his race when Amber Graves, a white inmate, was given a disciplinary hearing prior to plaintiff, despite the fact that the allegations against both Graves and plaintiff arose out of the same event. In this case, defendants have presented evidence that plaintiff's disciplinary hearing was not held on September 29, 2009 because of time constraints. (DE # 30-1 at ¶¶ 14-21.) Defendants have also presented evidence which shows that several other inmates, who were also disciplined for violations that occurred on September 17, 2009 and were scheduled to have their hearings on September 29, 2009, did not have their hearings on September 29 due to time constraints.[1] (*Id.* at ¶ 21.) Additionally, defendants have presented evidence that

---

[1] Nothing in the record reveals the race of these inmates.

plaintiff's next scheduled disciplinary hearing on October 5, 2009 was rescheduled because plaintiff had to be in court that day. (*Id.* at ¶ 23.) And, as noted above, plaintiff's disciplinary hearing was finally held on October 7, 2009. (*Id.* at ¶¶ 24-25).

Plaintiff has not responded to defendants' motion for summary judgment, and therefore, has not submitted any evidence indicating that the delay in his disciplinary hearing was in any way based on his race. The only evidence explaining the reason for the delay in this case is that the Board did not have time to hold plaintiff's hearing on September 29, 2009, and that plaintiff's next scheduled hearing, on October 5, 2009, had to be rescheduled because plaintiff had to be in court that day. Plaintiff has failed to offer any evidence that rebuts defendants' explanation for the delay.

Additionally, the fact that plaintiff's hearing was held at a later date than Graves's hearing is not sufficient to create an issue of material fact on this claim. *Shango*, 681 F.2d at 1104 ("[I]solated events that adversely affect individuals are not presumed to be a violation of the equal protection clause." (citation omitted)); *see also Moredock v. Hanlon*, No. 1:08-cv-995, 2008 WL 5391993, at *1 (S.D. Ind. Dec. 22, 2008) ("[T]he inherent discretion of prison authorities to manage internal discipline necessitates that some prisoners will receive more favorable treatment than others."). Plaintiff's failure to offer any evidence which would allow a rational jury to conclude that plaintiff's disciplinary hearing was delayed because plaintiff is black entitles defendants Lake and Kroemer to summary judgment on plaintiff's equal protection claim. *Hearn v. Kennell*, 433 F. App'x 483, 484 (7th Cir. 2010) ("[S]ummary judgment was proper because [plaintiff] has put

13

forth no evidence that the prison's decision . . . was motivated by intentional or purposeful discrimination.")

### C. Plaintiff's Claim Against Allen County Sheriff Kenneth Fries

Plaintiff has also sued Allen County Sheriff Kenneth Fries in his official capacity for "having in place customs, practices, policies[,] and procedures which cause, allow[,] and condone the unconstitutional punishment of inmates on the basis of their race." (DE # 27 at 1.) Suits against county officials in their official capacities are treated as suits against the County itself. *Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008); *Rome v. Myers*, 353 F. App'x 35, 36 (7th Cir. 2009). Thus, plaintiff's claim against Allen County Sheriff Kenneth Fries in his official capacity is treated as a claim against Allen County.

"Governmental entities cannot be held liable for the unconstitutional acts of their employees unless those acts were carried out pursuant to an official custom or policy." *Grieveson*, 538 F.3d at 771. "The 'official policy' requirement for liability under § 1983 is to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Id.* (quotations and citations omitted) (emphasis in original).

A plaintiff can establish municipal liability under Section 1983 by producing evidence of:

> "(1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority."

*Phelan v. Cook Cnty.*, 463 F.3d 773, 789 (7th Cir. 2006) (quoting *Roach v. City of Evansville*, 111 F.3d 544, 548 (7th Cir. 1997)). Because plaintiff has not responded to defendants' motion for summary judgment, the court is left with the allegations in his complaint as a guide to ascertain the unconstitutional policy plaintiff alleges Sheriff Fries maintained.

As noted above, in his complaint, plaintiff alleges that Sheriff Fries had "in place customs, practices, policies[,] and procedures which cause, allow[,] and condone the unconstitutional punishment of inmates on the basis of their race." (DE # 27 at 1.) Thus, it appears that plaintiff might be attempting to prove municipal liability under the express policy theory. The express policy theory applies when a plaintiff can point to an explicit policy or an omission in a policy that violates a constitutional right. *Calhoun v. Ramsey*, 408 F.3d 375, 379-80 (7th Cir. 2005). The only policy regarding the scheduling of disciplinary hearings the court has evidence of, however, is that the jail held disciplinary hearings in the order of the alleged violations, which is not in itself unconstitutional.

Plaintiff is therefore left to proceed under the "widespread practice" theory of municipal liability.[2] Defendants argue that plaintiff has no evidence of a "widespread practice." (DE # 31 at 15-16.) By pointing out plaintiff's lack of evidence, defendants have met their initial burden under this theory. *Carmichael,* 605 F.3d at 460. Because

---

[2] Plaintiff has not alleged that any of the individual defendants in this case were final policymakers, and has not alleged that the Allen County Sheriff was personally involved in the alleged Constitutional violation. *Baskin v. City of Des Plaines*, 138 F.3d 701, 705 (7th Cir. 1998) ("[O]fficial with final policymaking authority must actually have participated in the constitutional wrongdoing[.]" (citing *Cygnar v. City of Chicago,* 865 F.2d 827, 847 (7th Cir. 1989)). The court will therefore not address the final policymaker theory of municipal liability.

defendants have made this initial showing, the burden shifts to plaintiff to come forward with specific facts demonstrating that there is a genuine issue for trial. *Id.* Plaintiff has failed to meet this burden as to a widespread practice.

Plaintiff has alleged one instance of racial discrimination in the scheduling of a disciplinary hearing. Plaintiff does not allege that this happened to him more than once or that other inmates were affected by this alleged practice. In this case, plaintiff's evidence of this one alleged incident is insufficient to create an issue of material fact as to whether this practice was widespread. *See Estate of Moreland v. Dieter*, 395 F.3d 747, 759-60 (7th Cir. 2005) (three incidents of improper use of pepper spray not sufficient to constitute a widespread practice); *Palmer v. Marion Cnty.*, 327 F.3d 588, 595-96 (7th Cir. 2003) (two incidents of observing inmate-on-inmate violence where guards failed to intervene not sufficient to constitute widespread practice); *see also Thomas v. Cook County Sheriff's Dep't,* 604 F.3d 293, 303 (7th Cir. 2010) ("[T]here is no clear consensus as to how frequently such conduct must occur to impose *Monell* liability, except that it must be more than one instance[.]" (citation and quotation omitted)). In short, plaintiff has failed to create a genuine issue of material fact regarding the existence of a widespread practice, and cannot rest his official capacity claim against Allen County on this theory.

Plaintiff has failed to respond to defendants' motion for summary judgment with any evidence or argument which would raise an issue of material fact on his municipal liability claim. Therefore, defendants' motion for summary judgment as to plaintiff's municipal liability claim will be granted.

IV.     **Conclusion**

For the foregoing reasons, defendants Captain Trina Haywood, Officer Yeaetha Dillon (erroneously identified in the amended complaint as Yeaetha Dylan), Officer Jeffrey Kroemer, Lieutenant John Gonzales, Officer Kayle Schlemmer, Officer Robbie James, Officer Penny Lake, and the Allen County Sheriff's motion for summary judgment (DE # 30) is **GRANTED**.[3]

There being no claims remaining against defendants in this case, the clerk is directed to **ENTER FINAL JUDGMENT** as follows:

> Judgment is entered in favor of defendants Captain Trina Haywood, Officer Yeaetha Dillon (erroneously identified in the amended complaint as Yeaetha Dylan), Officer Jeffrey Kroemer, Lieutenant John Gonzales, Officer Kayle Schlemmer, Officer Robbie James, Officer Penny Lake, the unidentified shift commander, and the Allen County Sheriff, and against plaintiff Channing Scott, who shall take nothing by way of his complaint.

**SO ORDERED.**

Date: September 24, 2013

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT

---

[3] In his amended complaint (DE # 27), plaintiff also appears to bring a claim against an unidentified shift commander at the jail. (DE # 27.) Because defendant has failed to identify this defendant, the unnamed shift commander is dismissed from this case. *Williams v. Rodriguez*, 509 F.3d 392, 402 (7th Cir. 2007) ("Due to [the plaintiff]'s failure to identify this defendant . . . the district court's grant of summary judgment for this unknown and unnamed defendant is modified to dismiss this defendant from the case.").